## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MARIANO MOYA and LONNIE PETRY,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,

vs.                                      1:16-cv-01022-WJ-KBM

ROBERT GARCIA, Santa Fe County Sheriff,
MARK CALDWELL, Warden of Santa Fe
County Adult Correctional Facility,
MARK GALLEGOS, former Warden of
Santa Fe County Adult Correctional Facility,
in their individual capacities, and
BOARD OF COMMISSIONERS OF
SANTA FE COUNTY,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS AND FOR QUALIFIED IMMUNITY IN LIEU OF AN ANSWER

THIS MATTER comes before the Court on Defendants' Rule 12(b)(6) Motion To Dismiss And For Qualified Immunity In Lieu Of An Answer (**Doc. 7**) filed October 17, 2016. Having reviewed the relevant pleadings and the applicable law, the Court finds Defendants' Motion is well-taken, and is therefore **GRANTED**.

## BACKGROUND

This is a purported class action. The named Plaintiffs, Mariano Moya and Lonnie Petry, bring suit against Mark Gallegos, former Warden of the Santa Fe County Adult Correctional Facility ("SFCACF"), Mark Caldwell, current Warden of SFCACF, and Robert Caldwell, Santa Fe County Sheriff, (collectively "Individual Defendants"), as well as the Board of Commissioners of Santa Fe County (the "Board"). Plaintiffs claim Defendants violated their substantive and procedural due process rights under the Fourteenth Amendment by detaining

them for longer than fifteen days before their arraignment hearings. Plaintiffs seek enforcement of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Plaintiffs sue Individual Defendants in their individual capacities only, and bring a municipal liability claim against Board pursuant to *Monnell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Plaintiffs were originally indicted by grand juries on unrelated felony charges in First Judicial District Court in Santa Fe, New Mexico ("District Court"). The District Court scheduled arraignments, but both Plaintiffs failed to appear at these initially scheduled arraignments.[1]

Specifically, on August 14, 2014, a Santa Fe County grand jury indicted Mr. Moya on criminal charges. On August 19, 2014, the District Court mailed a summons to Mr. Moya ordering him to appear for arraignment scheduled for August 25, 2014, eleven days after his indictment. Mr. Moya did not appear for his arraignment, so the District Court issued a bench warrant for his arrest. On September 15, 2014, Mr. Moya was arrested and booked into SFCACF.

On September 23, 2014, the District Court docket reflects that the court was notified the arrest warrant was served on Mr. Moya. On October 27, 2014, a request for a second arraignment hearing was filed. The following day, the District Court issued an order setting the second arraignment for November 17, 2014.[2]

---

[1] Plaintiffs do not allege they did not receive notice of their first arraignments, or otherwise challenge any aspect of the first arraignments. *See* Doc. 1 ¶ 25.

[2] These facts are taken from court records Defendants attached to their Motion to Dismiss, which are subject to judicial notice as public records from the First Judicial District Court. Thus, the Court need not convert the motion to a motion for summary judgment. "Although a court generally must convert a motion to dismiss to one for summary judgment when the court considers "matters outside the pleadings," Fed. R. Civ. P. 12(d), a court need not do so if it takes "judicial notice of its own files and records, **as well as facts which are a matter of public record**."" *Rose v. Utah State Bar*, 471 F. App'x 818, 820 (10th Cir. 2012) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006) (quotation omitted) (emphasis added); *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001)). Facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004).

On November 17, 2014, 63 days after his arrest, Mr. Moya was arraigned. The District Court set Mr. Moya's bond and entered an order that SFCACF release Mr. Moya from custody immediately.

On June 25, 2015, a Santa Fe County grand jury indicted Mr. Petry on criminal charges. On June 29, 2015, the District Court mailed a summons to Mr. Petry ordering him to appear for arraignment scheduled for July 17, 2015, twenty-two days after his indictment.  Mr. Petry did not appear for his arraignment, so the District Court issued a bench warrant for his arrest.  On July 22, 2015, Mr. Petry was arrested and booked into SFCACF.

On July 31, 2015, the District Court docket reflects that the court was notified the arrest warrant was served on Mr. Petry.  On August 3, 2015, the District Court issued an order setting the second arraignment for August 21, 2015.[3]

On August 21, 2015, 30 days after his arrest, Mr. Petry was arraigned.  The District Court set Mr. Petry's bond, set the conditions of release, and entered an order that SFCACF release Mr. Petry on those conditions.

The District Court docket shows that on August 25, 2014, prior to Mr. Moya's first scheduled arraignment, a public defender entered an appearance on Mr. Moya's behalf. Likewise, on July 16, 2015, prior to Mr. Petry's first scheduled arraignment, an attorney made an appearance on Mr. Petry's behalf.

Article II, Section 13 of the New Mexico Constitution provides that individuals accused of non-capital crimes are entitled to bail if a court has not entered an order denying bail within seven days of incarceration after providing notice and an opportunity to be heard.

Under NMSA 1978 31-1-5, "[e]very accused shall be brought before a court having jurisdiction to release the accused without unnecessary delay."  Section 31-1-4 provides that

---

[3] *See supra* n. 2.

3

"[w]hen a warrant is issued in a criminal action, it shall be directed to a law enforcement officer, and the defendant named in the warrant shall, upon arrest, be brought by the officer before the court without unnecessary delay."   Section 31-1-3 states that criminal prosecutions in New Mexico "shall be commenced, conducted and terminated in accordance with Rules of Criminal Procedure."

New Mexico Rule of Criminal Procedure 5-303(A) provides that a "defendant shall be arraigned on the information or indictment within fifteen (15) days after the date of the filing of the information or indictment or the date of arrest, whichever is later."   Further, "[a]t arraignment, upon request of the defendant, the court shall evaluate conditions of release considering the factors stated in Rule 5-401 NMRA. If conditions of release have not been set, the court shall set conditions of release."   Rule 5-401 provides in part that a defendant must generally be released subject to the least onerous secured bond.

Mr. Moya and Mr. Petry argue that under these rules and statutes, detainees in New Mexico courts have a liberty interest in being released pretrial on the least restrictive set of conditions.   This liberty interest is effectuated by state law entitling them to an arraignment within fifteen days of their indictment or arrest, at which time the conditions of their release must be set or reviewed. Plaintiffs claim they were deprived of this liberty interest when they were detained for longer than fifteen days after their valid arrests but before their arraignment hearings.

Plaintiffs allege the Sheriff and Warden share responsibility to ensure that persons detained at SFACF are brought before a district court within fifteen days of indictment or arrest. Plaintiffs further allege the Sheriff and Warden share responsibility for promulgating policies on behalf of Santa Fe County to ensure detainees be brought before a court within fifteen days of

4

arrest or indictment.  Mr. Moya and Mr. Petry characterize their claims as "overdetention" under *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010).

Defendants filed a Rule 12(b)(6) Motion To Dismiss And For Qualified Immunity In Lieu Of An Answer (Doc. 7) on October 17, 2016.  Plaintiffs filed an Amended Response (Doc. 14) on November 14, 2016.  Defendants filed a Reply (Doc. 16) on December 9, 2016.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions. *See id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## DISCUSSION

Defendants move to dismiss Plaintiffs' Complaint for failure to state viable claims under Rule 12(b)(6), and in the alternative Defendants move for qualified immunity.[4]  The Court thus

---

[4] "[G]overnment officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (quotation omitted).  The Tenth Circuit employs a two-part test to analyze qualified immunity:  "In resolving a motion to dismiss based on qualified

first considers the viability of Plaintiffs claims.  "The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all."  *DeAnzona v. City & Cty. of Denver*, 222 F.3d 1229, 1234 (10th Cir. 2000) (quoting *County. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).  The constitutional rights allegedly violated are Plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment.  More specifically, Plaintiffs state they have a constitutionally recognized liberty interest in appearing before a district court within fifteen days of their arrest in order to have their conditions of release set.  Defendants were responsible for ensuring Plaintiffs were brought before the court, but caused Plaintiffs to be unlawfully detained in excess of fifteen days.

To sustain a claim under § 1983, a plaintiff must allege facts showing the "conduct complained of was committed by a person;" that the person was "acting under color of state law;" and that "this conduct deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  As to all of Plaintiffs' claims, the parties do not dispute Defendants are persons who acted under the color of state law.  This case centers on whether Plaintiffs were deprived of a constitutional right guaranteed by the Fourteenth Amendment.

The Fourteenth Amendment states: "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process, which requires a state

---

immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).  It is within this Court's discretion to determine which prong of the qualified immunity test should be addressed first.  *Brown*, 662 F.3d at 1164; *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a plaintiff fails to demonstrate that a defendant's conduct violated the law, the court need not determine whether the law was clearly established. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons. *See, e.g.*, *Lewis*, 523 U.S. at 845–46. Plaintiffs allege both substantive and procedural due process violations. The Court addresses each argument in turn.

## I.       Substantive Due Process

The Court first considers whether the facts Plaintiffs have alleged state a violation of a constitutional right, and concludes Plaintiffs have not done so. Plaintiffs must allege facts showing that these specific Individual Defendants, either through personal participation in the untimely arraignments or the promulgation of a policy, violated Plaintiffs' Fourteenth Amendment rights. *See Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Plaintiffs have not plausibly alleged such conduct pertaining to Individual Defendants.

In evaluating whether Plaintiffs stated claims under § 1983 for violations of their constitutional rights, the Court must examine these particular Defendants' actions to determine whether the facts show they participated in the alleged constitutional deprivation. Specifically, the question is to what degree Individual Defendants' conduct effectuated when the arraignment dates were set by the District Court. The Court concludes there is no viable § 1983 claim because there are no facts showing Individual Defendants had any involvement in the District Court setting Plaintiffs' arraignment hearings. Moreover, even if there were facts alleged that Individual Defendants were involved—such as an allegation that Individual Defendants failed to notify the District Court Plaintiffs were in custody or failed to inform Plaintiffs that bail had been posted—Plaintiffs would still have had to allege facts showing Individual Defendants acted with culpability, which they have not done. There are no allegations Plaintiffs were detained without

an arraignment hearing ever being scheduled, and there are no allegations Plaintiffs were misled about their bail status or detained past the point of bail being set.

The Supreme Court has held that "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *Lewis*, 523 U.S. at 845. Substantive due process violations are so clearly devoid of any legitimate governmental purpose that they would offend the Constitution regardless of procedural protections. *See id.* at 839. To establish a substantive due process violation, Plaintiffs must show Defendants' behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n. 8.

Defendants first contend Plaintiffs' substantive due process claims are precluded by the procedural due process claims. Defendants argue substantive due process claims are barred by the existence of a specific textual source of constitutional recourse. Defendants rely on *Shrum v. City of Coweta, Okla.*, 449 F.3d 1132, 1145 (10th Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)), where the Tenth Circuit held "[w]here a plaintiff has recourse to an "explicit textual source of constitutional protection," a more general claim of substantive due process is not available." Defendants state that Plaintiffs correctly identified their procedural due process claims as the appropriate source of constitutional recourse for the alleged deprivation of process, so they cannot also state substantive due process claims.

Plaintiffs respond that Defendants' are incorrect because the Due Process Clause of the Fourteenth Amendment contains a substantive component and a procedural component, and neither provide for greater protection than the other. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The Court agrees with Plaintiffs in this regard, and concludes Plaintiffs' procedural due process claim does not preclude their substantive due process claim. *Graham* stands for the proposition that when a constitutional claim is covered by a specific constitutional provision,

such as the Fourth Amendment, the claim must be analyzed under the standard that applies to that specific provision, not under the general standard of substantive due process. *See Graham*, 490 U.S. at 393–94. However, the Court in *Graham* limited this notion to situations where a plaintiff asserts a grievance under substantive due process generally, when the proper analytical framework for the claim really falls under a specific constitutional provision. *See id.*

Here, both of Plaintiffs' claims fall under the Fourteenth Amendment rather than a different constitutional source. Defendants have not suggested that Plaintiffs' claims fall under a source other than the Fourteenth Amendment. The substantive due process component and the procedural due process component of the Fourteenth Amendment each afford different rights to a plaintiff. *See Archuleta v. Col Dept. of Institutions*, 936 F.2d 483, 489 n.6, 490 (10th Cir. 1991) (citation omitted) ("Procedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision."). Therefore, Plaintiffs' substantive due process claims are not precluded by their procedural due process claims.

However, the Court concludes Plaintiffs have not alleged a viable substantive due process claim against these particular Defendants. Plaintiffs rest their substantive due process claims on their pre-arraignment confinement, which they claim violated New Mexico Rule of Criminal Procedure 5-303(A) and NMSA 1978 §§ 31-1-3 to -5. Read together, these provisions require that an arrestee be brought before a district court without unnecessary delay and no later than fifteen days after arrest or indictment. The question is whether Plaintiffs' alleged prolonged detention after a valid arrest shocks the conscience. *See Lewis*, 523 U.S. at 846–47. In other

words, prolonged pre-trial detention does not rise to the level of a constitutional violation unless Defendants' individual conduct shocks the conscience and these particular Defendants acted with sufficient culpability.

Defendants argue Plaintiffs have not alleged plausible substantive due process claims against Individual Defendants.  "A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability.  Personal liability 'under § 1983 must be based on personal involvement in the alleged constitutional violation.'" *Brown*, 662 F.3d at 1163 (quoting *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997) (footnote omitted).  A plaintiff establishes supervisory liability "by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.  The Court considers each form of liability, and agrees with Defendants that Plaintiffs have not alleged a viable substantive due process claim.

### A.  Plaintiffs Have Not Sufficiently Alleged Personal Liability.

"Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Brown*, 662 F.3d at 1163 (citation omitted).  Defendants argue the Complaint fails to assert the Individual Defendants personally participated in the alleged deprivation of rights, which is the timing of the arraignments, so the claims against Individual Defendants should be dismissed.  Defendants point out they notified the District Court of the need for an arraignment and the District Court promptly scheduled one for each named Plaintiff, reflected by the District Court docket that explicitly shows the District Court was aware Plaintiffs were in custody.   That the District Court allegedly delayed the dates of the

arraignments, or that the District Court did not schedule the arraignments as expeditiously as Plaintiffs would have liked, is not within Individual Defendants' control. *See Wilson v. Montano*, 715 F.3d 847, 854 (10th Cir. 2013) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (internal quotation marks and citation omitted);

Defendants further contend the Complaint does not sufficiently allege the type of participation required to establish individual capacity liability. *See* Compl. ¶¶ 23, 39–41, 55, 57, 69–71 (allegations referring to "Defendants" collectively but not parsing out the named individuals). Claims regarding Defendants' cumulative conduct do not establish individual capacity personal participation. Defendants liken this case to *Brown*, 662 F.3d at 1165, where the Tenth Circuit held a complaint that referred to actions of "Defendants" did not sufficiently show the individual defendant's specific actions. The court noted that only one paragraph identified an individual defendant by name and reasoned the plaintiff needed to identify specific actions taken by particular defendants. *See id.* at 1165–66. The complaint did not sufficiently allege personal liability because it did not specifically recite how the defendant acted with regards to the plaintiff or even that the defendant knew about the alleged violation. *See id.* at 1165. The court explained, "it is particularly important in a § 1983 case brought against a number of government actors sued in their individual capacity ... that the complaint make clear exactly who is alleged to have done what to whom ... as distinguished from collective allegations." *Id.* (internal quotation marks and citation omitted). Defendants here argue the Complaint fails for similar reasons as in *Brown* because it lacks substantive allegations that the Individual Defendants deprived Plaintiffs of their constitutional rights.

Plaintiffs argue they have stated viable substantive due process claims of "overdetention" because they were imprisoned for longer than legally authorized.  Plaintiffs argue they had a liberty interest in having bail set within fifteen days of their arrest, and the Tenth Circuit has widely recognized a substantive due process right of pretrial detainees to bail.  Plaintiffs first rely upon *Gaylor v. Does*, 105 F.3d 572, 575–76 (10th Cir. 1997), where the plaintiff was arrested pursuant to a valid warrant, and the following day his bail was set.  Despite the plaintiffs' and his friends' protests and attempts to post bail, the plaintiff was not released until several days after bail had been set.  *See id.* at 573–74.  The city was following a policy of advising a detainee about his bail status only if he asked about it.  *See id.*  The Tenth Circuit reasoned the plaintiff "obtained a liberty interest in being freed of detention" once the judge set his bail.  *Id.* at 576.  Once bond was set, "the state's justification for detaining him faded."  *Id.*  The Court considered whether the city's policy of informing detainees of their bail status only if they asked punished detainees by unreasonably infringing his liberty interests in a manner unrelated to a legitimate goal.  *See id.* at 576–77.

Similarly, Plaintiffs rely on *Dodds* for the proposition that Individual Defendants' lack of a policy ensuring timely arraignments deprived them of their substantive due process rights.  In *Dodds*, an arrestee sued the sheriff in his individual capacity for violation of his Fourteenth Amendment rights in posting bail.  614 F.3d at 1189.  The plaintiff was arrested pursuant to a valid warrant, booked, and a judge posted bond.  *Id.*  Two individuals asked the jail about posting bond on the plaintiff's behalf but the jail told them the plaintiff could not post the preset bail until after he was arraigned by a judge.  *Id.*  The county had a policy of not permitting an arrestee to post bond after hours.  *Id.* at 1190.  As in *Gaylor*, the court in *Dodds* emphasized a plaintiff has a "liberty interest in being freed of detention once his bail is set" and that a state

12

may only interfere with such interest for legitimate reasons.  *Id.* at 1192.  The relevant question was whether the particular defendant deprived the plaintiff of this right.  *Id.* at 1193.  The court concluded the sheriff "may have deliberately enforced or actively maintained the policies in question at the jail" so the plaintiff sufficiently alleged personal involvement in the misconduct. *See id.* at 1204.  Plaintiffs note that in *Gaylor* and *Dodds*, and unlike this case, bail had been ordered in a fixed amount, but state the distinction is immaterial because Plaintiffs were entitled to release on bail pursuant to NMRA 5-401.

Plaintiffs also rely upon decisions from other Circuits in arguing extended detention without judicial first appearance constitutes a denial of substantive due process.  In *Coleman v. Frantz*, 754 F.2d 719, 721 (7th Cir. 1985), a detainee repeatedly requested to be taken before the court after he was arrested and incarcerated for failure to make bail after bond was set.  The Seventh Circuit held a constitutional violation occurs when a presumptively innocent person is incarcerated by the sheriff for 18 days without being taken before a judicial officer for an initial appearance.  *Id.* at 731.  However, the court held qualified immunity was proper for the sheriff, because "plaintiff's constitutional right to a first appearance before a judicial officer following arrest pursuant to a valid warrant based on a determination of probable cause, setting of bond and notification of charges was not clearly established."  *Id.* (quotation omitted).  Moreover, "defendant did what he could to secure an early first appearance for plaintiff" so he was shielded from § 1983 liability.  *Id.*

In *Armstrong v. Squadrito*, 152 F.3d 564, 576 (7th Cir. 1998), the plaintiff was arrested and due to the sheriff's office misfiling papers, the plaintiff was detained for 57 days without an initial appearance, despite his repeated protests.  The Seventh Circuit held such conduct shocked the conscience.  *Id.* at 582.  Similarly, in *Hayes v. Faulkner Cty., Ark.*, 388 F.3d 669, 672–74

13

(8th Cir. 2004), the Eighth Circuit considered a detainee who was held for 38 days pre-appearance based on a jail policy that simply submitted detainee names to the court to wait for the court to schedule appearances.  The court held the jailer was liable for substantive due process violations because he helped promulgate the policy of waiting for the court to schedule a hearing, and there were allegations he chose not to respond in light of the plaintiff's grievances. *See id.* at 674–75.

The Court finds Plaintiffs failed to sufficiently plead allegations pertaining to Individual Defendants.  Personal liability under Section 1983 must be based on Individual Defendants' personal involvement in the deprivation. *Brown*, 662 F.3d at 1164.  As in *Brown*, Plaintiffs have not plausibly alleged personal involvement by these Defendants, and they have not alleged any policy promulgated by Individual Defendants that caused the arraignments to be scheduled later than fifteen days after Plaintiffs were arrested and booked into SFCACF.  The Complaint makes broad statements about actions of the collective "Defendants" but alleges no facts that show how Mr. Garcia, Mr. Caldwell, and/or Mr. Gallegos individually participated in Plaintiffs' constitutional deprivations. *See Brown*, 662 F.3d at 1165.  For example, Plaintiffs state:

- "Defendants have consistently failed to ensure that detainees are able to appear before a district court within the constitutionally required timeframe."  Compl. ¶ 68.

- "Defendants' actions have frequently caused detainees to be held for days, weeks, and even months longer than allowed by law." *Id.* ¶ 70.

- "As a result of Defendants' unconstitutional actions, Plaintiffs and members of the class have suffered damages." *Id.* ¶ 73.

The only allegations specifically pertaining to Individual Defendants are that the Santa Fe County Sheriff and Warden of SFACF "share responsibility for ensuring that persons detained at the SFCACF are brought before a district court within fifteen days" and they "share personal

responsibility" for implementing policies to ensure detainees are arraigned within fifteen days of arrest.  *Id.* ¶¶ 20, 21.  Even assuming it is true that the Sheriff and the Warden share such responsibility, the allegation does not state personal participation in the District Court's scheduling of the arraignment hearings.  Regardless of whether the Sheriff and Warden share duties, there are no facts alleged that they did anything to effectuate the District Court's decision as to when to schedule arraignments.  Plaintiffs allege no facts that bear on any particular Defendant's specific conduct.

The Complaint contains no explanation of "who is alleged to have done what to whom" and to the contrary, the Complaint contains only collective allegations concerning the Defendants.  *Id.* ¶¶ 68–74, 76–78.  The Complaint fails because it does not specifically allege what Mr. Gallegos, Mr. Caldwell, or Mr. Garcia did with regards to each specific Plaintiff.  *See Brown*, 662 F.3d at 1165.  There are simply no facts stated with regards to any particular Defendant's personal involvement in the alleged deprivation.

Ultimately, the Complaint is devoid of allegations against the individual capacity defendants.  Under *Iqbal*, blanket statements that the Sheriff and Warden "share responsibility for ensuring" detainees are brought before the court within fifteen days are conclusory and cannot survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 664.  Notably, Plaintiffs have not even alleged that there was any order directing their release or determining their bond.  Rather, the district court scheduled Plaintiffs' arraignments within a matter of days after the bench warrants were served and Plaintiffs were booked into SFCACF.  Mr. Moya's bench warrant was served September 15, 2014.  Eight days later, on September 23, 2014, the District Court was notified that Mr. Moya was in custody.  Mr. Petry's bench warrant was served July 27, 2015.

Four days later, on July 31, 2015, the District Court was notified Mr. Petry was in custody.[5]  On August 3, 2015, the District Court set Mr. Petry's second arraignment.  Thus, these facts plausibly show the District Court was on notice Plaintiffs were awaiting pretrial process and Individual Defendants did what was required of them to get Plaintiffs in front of the District Court.  Although the pleading standard of Fed. R. Civ. P. 8 "does not require detailed factual allegations . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.  Such "unadorned" allegations are precisely what Plaintiffs make here.

Furthermore, the Court finds Plaintiffs have not stated a claim for "overdetention." *Gaylor* and *Dodds* and their progeny are distinguishable by the simple fact that in each of those cases, bail had already been set.  In those cases, due to affirmative jail policies, the plaintiffs were deprived of their right to post bail.  *Gaylor* and *Dodds* thus set forth the analysis to be used when an arrestee is detained too long after a judge sets bond.  *See e.g.*, *Gaylor*, 105 F.3d at 576; *Dodds*, 614 F.3d at 1193.  That is not the case here, and Plaintiffs attempt to offset this distinction fails.  This is not a situation where Plaintiffs were denied bail.  There are no allegations SFCACF had a bond order from the District Court and disregarded it, or refused to notify the District Court the Plaintiffs were awaiting process. Rather, Plaintiffs here protest the length of time they had to wait *until* bail was set in the first place.

This case is further unlike the *Coleman*/*Armstrong*/*Hayes* line of cases upon which Plaintiffs rely.  Here, the facts show the District Court knew both Plaintiffs were in SFCACF custody because an arraignment was scheduled for Mr. Moya eight days after his arrest, and an arraignment was scheduled for Mr. Petry nine days after his arrest. There are no allegations

---

[5] Due to current electronic technology, such as e-mail, SFCACF presumably could have notified the District Court at an earlier time, or nearly immediately after their booking, that Plaintiffs were in custody.  Despite this observation about more expeditious ways of notifying the District Court of Plaintiffs' arrests on the outstanding bench warrants, efficiency is not the standard the Court must use in considering whether Plaintiffs have alleged plausible due process violations.

Plaintiffs protested their confinement, and there are no allegations Plaintiffs were detained based on misfiled paperwork or according to affirmative county policies that resulted in arraignment hearings not being scheduled.  Simply stated, there are no allegations in the Complaint that shock this Court's conscience regarding the scheduling of Plaintiffs' arraignments.  Plaintiffs were arrested on valid warrants based on their failure to appear at their first arraignments.  Had Plaintiffs appeared at the initial date and time for their arraignments, bench warrants would not have been issued by the District Court and conditions of pretrial release including bail amounts would have been set by the District Court at the date and time first set for Plaintiffs' arraignments.  In any event, the bench warrants for failure to appear were served on Plaintiffs, they were booked into SFCACF, and the District Court was notified in less than ten days of the arrests that Plaintiffs were in custody.  Second arraignment hearings were then scheduled thereafter.  Both Plaintiffs had counsel throughout these events as indicated by the notices of appearance by attorneys filed on Plaintiffs' behalf, and there are no allegations Plaintiffs ever protested their status or demanded to be brought before a court.  In fact, if both Plaintiffs had criminal defense counsel at all relevant times, then the Court cannot help but ask the question why Plaintiffs' counsel didn't do something to effectuate earlier arraignment hearings for Plaintiffs.  A simple motion for an expedited arraignment filed by criminal defense counsel on behalf of Plaintiffs would have probably alerted the District Court of the need to arraign Plaintiffs sooner.  Individual Defendants are not responsible to ensure that Plaintiffs had effective assistance of counsel and if Plaintiffs' court appointed criminal defense counsel somehow failed to adequately protect the due process rights of the Plaintiffs, that is not the fault of the Individual Defendants.  Under these circumstances, the alleged delays in the arraignments do not shock the Court's conscience.

Plaintiffs correctly summarize New Mexico law, which provides that Plaintiffs were entitled to the least restrictive bail options and conditions and that detainees are entitled to release on bail, subject to exceptions that do not apply here.  *See* Rule 5-401 NMRA; *State v. Brown*, 2014 -NMSC- 038, ¶ 39, 338 P.3d 1276.  But in this case bail had not yet been set and the responsibility for setting bail lies with the District Court and not with the Individual Defendants.  Moreover, although Plaintiffs make vague challenges to a county policy that prevented Plaintiffs from receiving a bail determination, Plaintiffs never allege facts showing the existence of such a policy. Compl. ¶ 57.  Therefore, Plaintiffs have failed to plausibly allege these particular Defendants did anything at all to effectuate the alleged deprivation.  They do not claim Defendants misled them about bail status, detained them beyond bail being posted, or violated a court order directing their release.  Defendants appropriately point out is unclear why the District Court scheduled the arraignments when it did, but there are no allegations Defendants willingly extended the arraignment time and there are no allegations these Defendants played any role in the timing of the District Court's arraignment settings.  Thus, if there was any violation here, the facts alleged show it was due to the District Court's scheduling delays and not Defendants' conduct.

## B.  Plaintiffs Have Not Sufficiently Alleged Supervisory Liability.

A plaintiff establishes supervisory liability against a warden or sheriff "by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199; *See also Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014).  At a minimum, to demonstrate the requisite mental state, a plaintiff must establish "a deliberate and

intentional act on the part of the supervisor to violate the plaintiff's legal rights." *Wilson*, 715 F.3d at 858.  "Just as § 1983's plain language doesn't authorize strict liability, it doesn't authorize *respondeat superior* liability . . .  To establish a violation of § 1983 by a supervisor, as with everyone else, then, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate [the plaintiff's legal] rights." *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010) (internal quotation marks and citation omitted) (emphasis in original).

Defendants argue the Complaint fails to establish that Mr. Garcia, Mr. Caldwell, and/or Mr. Gallegos promulgated a defective policy, caused the alleged constitutional deprivation, or acted with the requisite state of mind.  Defendants point out that Plaintiffs challenge the *absence* of a policy so the first element is not met.  Second, Defendants claim  Plaintiffs have not alleged facts showing causation.  The District Court was aware the named Plaintiffs were arrested and detained, so any alleged over-detention was not caused by conduct of Defendants but rather was caused by the District Court's scheduling of the arraignments.  Defendants point out that Plaintiffs have not  alleged that they were deprived of a probable cause determination; instead, they have simply attacked the speed with which the District Court moved in arraigning them.

Regarding the third element, Defendants point out that Plaintiffs merely state the issue was "obvious to defendants" which does not sufficiently allege a culpable state of mind.  Compl. ¶ 71. Merely stating that a violation was "obvious" does not state the Individual Defendants acted with the requisite level of knowledge to state a claim.

In response, Plaintiffs point to the allegation in the Complaint that the Sheriff and Warden of SFCACF "share personal responsibility for promulgating … policies and procedures … to ensure that detainees are brought before a court within fifteen days of arrest or indictment." *Id.* ¶ 21.  Plaintiffs argue they have alleged personal involvement and that Individual Defendants

acted with the requisite intent. Plaintiffs contend Individual Defendants never promulgated or implemented any policy to ensure Plaintiffs' constitutional rights were not violated and that Individual Defendants share the responsibility to implement such a policy, thus they have sufficiently alleged causation.

Regarding the requisite intent prong, Plaintiffs point out they alleged Individual Defendants acted "intentionally, knowingly, and with deliberate indifference." *Id.* ¶ 57. Further, given the sheer number of violations alleged in the Complaint, Defendants' actions on named Plaintiffs and the putative class was "obvious." *See id.* ¶¶ 62, 64. Plaintiffs point out that in *Wilson*, the court emphasized the complaint alleged the individual defendant "acted with deliberate indifference to routine constitutional violations occurring at the" facility, which sufficiently alleged the requisite state of mind. 715 F.3d at 858. Similarly here, Plaintiffs have met their burden to plead culpable state of mind simply by alleging the number of violations was "obvious."

The Court finds Plaintiffs failed to sufficiently plead allegations pertaining to Individual Defendants in their supervisory roles. Supervisory liability must be based on a policy promulgated by Individual Defendants. *Brown*, 662 F.3d at 1164. The Court carefully combed through the factual statements in the Complaint, and concludes Plaintiffs make no allegations regarding any Santa Fe County policy that bears on the way in which arraignment hearings are scheduled. To the contrary, Plaintiffs focus on the absence of a policy, so the first element of supervisory liability is not met. *See* Compl. ¶¶ 41; *See also Dodds*, 614 F.3d at 1199 (plaintiff must allege "the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that caused the complained of constitutional harm"). Even if Plaintiffs had alleged the existence of a specific Santa Fe County policy, which they have not,

there are no allegations with regards to each specific Defendant and how he allegedly participated in the promulgation of such policy. *See supra* § I.A; *See also Brown*, 662 F.3d at 1164. Rather, the Complaint is rife with collective allegations that Defendants generally failed to ensure SFCACF detainees appear in court within fifteen days. *See* Compl. ¶¶ 53, 68. But unlike *Dodds*, here Plaintiffs have pointed to no County policies that operated in a way to deprive Plaintiffs of their liberty interest in a prompt arraignment. *See Dodds*, 614 F.3d at 1204.

This case contrasts with *Wilson*, where the Tenth Circuit held the plaintiff sufficiently alleged facts that the warden promulgated policies which caused the alleged constitutional harm. *Wilson*, 715 F.3d at 857. In *Wilson*, the plaintiff alleged a specific "policy or custom of holding citizens without pending criminal charges until the court filed orders of release *sua sponte*." *Id.* The complaint further alleged the warden's policy of holding citizens without court orders caused the violation of the plaintiff's Fourth Amendment right to a prompt probable cause determination. *Id.* These facts plausibly stated a due process claim because the allegations tied the individual warden's conduct to the precise harm complained of. In contrast, in this case there are no facts alleged that tie any specific Defendant's conduct to the harm complained of, which is the speed with which the District Court scheduled Plaintiffs' arraignment hearings.

Moreover, Plaintiffs failed to plead facts showing that any particular Defendant "acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199. Plaintiffs allege "when detainees are held longer than allowed by law, that fact is obvious to Defendants because Defendants are aware of when detainees are booked and taken into detention." Compl. ¶ 71. Likewise, Defendants acted with "deliberate indifference" to Plaintiffs' liberty interests. *Id.* ¶¶ 72, 78. However, these conclusory and threadbare allegations simply recite the elements of a substantive due process claim and do not plausibly show how any

21

named Defendant acted with requisite culpability.  Under *Iqbal*, such conclusory statements cannot survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 664.

The Court concludes there is no viable 1983 claim against the Individual Defendants because there are no allegations of their personal involvement in when the District Court scheduled Plaintiffs' second arraignments.  This would be a very different case if there were allegations the Defendants never notified the District Court that Plaintiffs were in custody, or if Defendants misinformed Plaintiffs of their bail status.  Plaintiffs may very well have been deprived of a liberty interest by the District Court, but they have not alleged viable § 1983 claims against Mr. Garcia, Mr. Caldwell, or Mr. Gallegos individually.  There are no facts alleged that these particular Defendants did anything to cause Plaintiffs' arraignments to be scheduled in an untimely manner, and there are no facts alleged showing any of these Defendants' conduct shocks this Court's conscience.

## II.     Procedural Due Process

Plaintiffs' procedural due process claims appear to overlap with their substantive due process claims.  With regards to the procedural claims, Plaintiffs make the same broad statements of what the "Defendants" collectively did or did not do, for example:

- "Defendants have systematically failed to ensure that detainees are brought before a district court within fifteen days, thereby systematically violating detainees their due process rights . . ." Compl. ¶ 55.

- "Defendants' actions in causing Plaintiffs and the members of the class to be deprived of their clearly established constitutional rights under the Fourteenth Amendment were objectively unreasonable, intentional, willful and wanton . . ." *Id.* ¶ 58.

Thus, with regards to the procedural claims, the complained-of injury is virtually identical to the substantive due process claim:  Plaintiffs were deprived of their constitutional right to a first appearance within fifteen days of arrest.  Defendants make two principal arguments as to why

Plaintiffs failed to allege a procedural due process claim.  First, Plaintiffs have not alleged individual conduct, and second they have not alleged Defendants did anything to effectuate their alleged "overdetention."  The Court agrees.

As explained above, Plaintiffs have not sufficiently alleged Individual Defendants' personal involvement in when their arraignments were scheduled.  Inasmuch as Individual Defendants are responsible for notifying the District Court that Plaintiffs had been booked into detention and were awaiting arraignment, and there is every indication Individual Defendants did so.  Plaintiffs are nevertheless unhappy with the length of time they waited until their arraignment hearings, where bond was posted and the Plaintiffs were ordered immediately released.  Under *Brown*, Plaintiffs failed to plead allegations pertaining to Individual Defendants, which is particularly important in a multi-defendant § 1983 case. *See supra* § I.A.  In other words, Plaintiffs have alleged no facts showing that Individual Defendants participated in any deliberate, intentional acts that violated Plaintiffs constitutional rights.  Plaintiffs are simply unhappy with the length of time they waited until their arraignment hearings but as previously noted, the District Court was responsible for setting the arraignment hearings, not the Defendants.  All of the procedural due process allegations made in Plaintiffs' Complaint improperly lump the Defendants together without specifying who did what to whom.  "[T]here is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Rather, "the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Id.* at 994-95. In other words, Plaintiffs must allege some personal involvement by Mr. Garcia, Mr. Gallegos, and Mr. Caldwell in the alleged constitutional violation to succeed under §1983. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *see also Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990) (plaintiffs must

23

show that a defendant "expressly or otherwise authorized, supervised, or participated in the conduct which caused the constitutional deprivation"). Direct participation is not necessary, but Plaintiffs must have alleged some facts establishing a causal connection between the act and the injury. Yet here, Plaintiffs assert no facts alleging what Individual Defendants did to whom. As mentioned above, there are no allegations Mr. Garcia, Mr. Caldwell, and Mr. Gallegos have any ability to control the District Court's arraignment calendar. Therefore, Plaintiffs have no valid claims against Individual Defendants.

Finally and as previously noted, it does not escape the Court that Plaintiffs chose not to attend their first arraignment hearings, and thus effectively chose not to use their first opportunity to be heard. *Boddie v. Connecticut*, 401 U.S. 371, 378–79 (1971) (holding that "the hearing required by due process is subject to waiver"); *Miller v. Campbell County*, 945 F.2d 348, 354 (10th Cir. 1991) (finding no procedural due process violation when plaintiffs were offered but did not use opportunity for hearing).

In sum, Plaintiffs received the process they were due by these particular Defendants. To the extent the New Mexico statutes create a federal liberty interest, those statutes guaranteed Plaintiffs the right to an arraignment. If there was any deprivation here, it was caused by the District Court's failure to schedule Plaintiffs' arraignments within fifteen days after their arrests. The Complaint simply fails to allege any facts remotely showing that Individual Defendants did anything to cause Plaintiffs' second arraignments to occur longer than fifteen days after their arrests.

## III. Municipal Liability Claims Against The Board

The Court has concluded Individual Defendants did not commit any constitutional violations against these Plaintiffs, so the Court concludes the Board is also entitled to dismissal.

Municipal liability may not be imposed on an entity defendant where individual defendants are found to have committed no constitutional violation. *See Butler v. City of Prairie Village*, 172 F.3d 736, 747 (10th Cir. 1999) ("Because our conclusion that the individual defendants are entitled to qualified immunity rests on the determination that none of them violated Plaintiff's constitutional rights, the City may not be found to have violated his rights."); *Wilson v. Meeks*, 98 F.3d 1247, 1255 (10th Cir. 1996) (quotation omitted) ("municipality may not be held liable where there was no underlying constitutional violation by any of its officers."); *DeAnzona*, 222 F.3d at 1236 (to establish a *Monell* claim, plaintiff must show an underlying constitutional violation); *Dry v. U.S.*, 235 F.3d 1249, 1259 (10th Cir. 2000) ("In the absence of an underlying constitutional violation, there can be no derivative liability"); *City of Los Angeles v. Heller*, 475 U.S. 796, 798–99 (1986); *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995).

## IV.    Qualified Immunity

In the alternative to seeking dismissal under Rule 12(b)(6), Defendants ask the Court to grant them qualified immunity because neither the Tenth Circuit, nor the Supreme Court, has placed any time limitations on how quickly an arrestee must be arraigned under the Fourteenth Amendment.  The District Court docket illustrates it was on notice of the arrest and detention and actually set a second arraignment hearing for both Plaintiffs, which shows Defendants could not have known that they needed to do more to force the District Court to act more quickly, assuming they could do more to force the District Court to act more quickly.  In other words, Individual Defendants could not have known that complying with the District Court's timeline violated Plaintiffs' civil rights.  Plaintiffs respond that under *Dodds*, 614 F.3d at 1192, it was clearly established in the Tenth Circuit that Plaintiffs had a liberty interest in avoiding prolonged

pretrial detention.  However, as the Court explained at length above, the *Dodds* line of cases holds that a detainee has a liberty interest in being freed of detention once bail is set.  *See supra* § I.  The Court determined that the facts alleged here are unlike *Dodds* because Plaintiffs do not allege there was an order setting bail.  The Court agrees with Defendants that there is no clearly established case law requiring that, under the factual circumstances of this case, Individual Defendants must have somehow forced the District Court to arraign Plaintiffs more quickly. This is especially true in light of the fact that New Mexico law prohibited Defendants from releasing Plaintiffs without a court order.  *See* NMSA 1978 §§ 33-3-12(B), 33-3-15.

## V.   Amendment Would Be Futile

The Court denies Plaintiffs' request to amend their Complaint.  Plaintiffs have not formally moved the Court for leave to amend, so the Court has no proposed amended complaint on which to base its decision.  Moreover, the Court finds even if Plaintiffs had properly moved to amend the Complaint, any amendment would be futile because Individual Defendants are entitled to qualified immunity.  "A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason . . . ." *Bauchman for Bauchman v. West High School*, 132 F.3d 542, 562 (10th Cir. 1997) (citations omitted).  Determining whether to grant leave to amend a pleading is an exercise in the Court's discretion.  *State Distributor's, Inc. v. Glenmore Distilleries, Co.,* 738 F. 2d 405, 416 (10th Cir. 1984); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

Accordingly, the Court grants Defendants' Rule 12(b)(6) Motion To Dismiss And For Qualified Immunity In Lieu Of An Answer (**Doc. 7**).  Plaintiffs' claims against Defendants are **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE